UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

UNITED STATES OF AMERICA,

v.

EUGENE JAMAR THOMAS,

                    Defendant.

———————————————————————

**DECISION AND ORDER**

6:21-mr-06097 EAW

## I.  <u>BACKGROUND</u>

Pending before the Court are an appeal filed by defendant Eugene Jamar Thomas ("Defendant") (Dkt. 1; Dkt. 3) regarding the conditions of release set by United States Magistrate Judge Mark W. Pedersen and the government's cross-appeal regarding the same (Dkt. 4).

Defendant is charged by criminal complaint with falsely reporting income and withholdings in his 2015 and 2016 federal tax returns in violation of 18 U.S.C. § 287.  *See* Criminal Complaint, *United States v. Eugene Jamar Thomas*, No. 6:21-mj-00564, Dkt. 1 (W.D.N.Y. Apr. 9, 2021).  According to the government, Defendant attempted to obtain millions of dollars in tax refunds, and in 2016 he successfully obtained a tax refund check of $482,017 to which he was not entitled, which was deposited into two bank accounts opened under the name "Living Trust of Eugene Thomas DTD 09/15/2016, Eugene Jamar Thomas TTEE."  (Dkt. 4 at 2).

According to the Pretrial Services Report, Defendant is 42 years old; he was born and raised in Rochester New York; he has primary custody of his 5-year old daughter; and

he served in the United States Navy from 1999 until his honorable discharge in 2004.  Upon the advice of counsel, Defendant refused to discuss his employment, finances, substance abuse history, and criminal records, but did disclose prior mental health treatment including a 13-month commitment by the State of Maryland to a mental hospital in 2013 and a one-week hospitalization for mental health concerns in September 2019.  Defendant reported that he has never participated in any outpatient mental health programs.

A criminal record check reported in the Pretrial Services Report revealed an arrest in February 2010 for child abuse in the second degree (a felony) and assault in the second degree (a misdemeanor).   According to the government, Defendant was "found incompetent to stand trial, and . . . found by reason of a mental disorder to be a danger to self or the person or property of another" (Dkt. 4 at 6-7), and in 2010, he was ordered committed to the Department of Mental Health and Hygiene for confinement (Dkt. 4 at 7; *see* Dkt. 4-5 at 2).[1]  Then, in October 2013, Defendant was arrested for two traffic citations (driving a motor vehicle without a license and authorization and operating an unregistered motor vehicle), and while a bench warrant was issued in 2014, it was ultimately recalled/quashed in 2020.  Defendant has no prior criminal convictions.

The government's papers detail the alleged contents of an interaction between Defendant and an IRS Revenue Officer on October 17, 2016, when among other things Defendant allegedly introduced himself by saying: "I am the Trust" and referred to himself in the third person, ultimately becoming upset, referring to the officer as a "despicable

---

[1]     It is not clear whether this commitment is the same commitment referenced in the Pretrial Services Report that Defendant reported occurring in 2013 for 13 months.

snake," and telling her to get off his property. (Dkt. 4 at 3-4). Thereafter, Defendant allegedly sent various communications to the IRS with bizarre claims, such as the contention that the United States went bankrupt in 1933 and therefore the citizens of the United States were all creditors. (*Id.* at 5; see Dkt. 4-3 at 8). Defendant also communicated with various other individuals and entities regarding this matter, including purportedly Pope Francis and the Attorney General for England and Wales. (Dkt. 4 at 4-5).

Because of Defendant's mental health history, Judge Pedersen imposed the following condition, referred to as "Condition M," in setting Defendant's conditions of release:

> [Defendant must] [s]ubmit to a mental health evaluation and/or treatment as approved by Pretrial Services. The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.

(Dkt. 3-1 at 3). Defendant does not object to the imposition of Condition M; instead, he objects to certain language set forth in the release that he was asked to sign by the United States Probation Office ("USPO") to effectuate it.

The first paragraph of the release states as follows:

> The confidential information to be released will include: date of entrance to program; attendance records; drug detection test results; type, frequency, and effectiveness of therapy; general adjustment to program rules; type and dosage of medication; response to treatment; *test results (e.g., psychological, psycho-physiological measurements, and vocational evaluations)*; date of and reason for withdrawal or termination from program; *diagnosis; and prognosis*.

(Dkt. 3-1 at 27 (emphasis added)). Defendant objects to the disclosure of the information emphasized in the above paragraph. Furthermore, Defendant objects to the language of the

release that states as follows: "Such information may also be made available to the probation office for the purpose of preparing a presentence report in accordance with federal law." (*Id.*).

Defendant voiced his objections to Judge Pedersen, and the issues were litigated after the initial appearance.  Both Defendant and the government made written submissions concerning their positions (*see* Dkt. 3-1 at 29-33; 39-45), and in addition, the USPO submitted a memorandum dated April 26, 2021, to Judge Pedersen setting forth its position that removing "evaluations, diagnosis, and prognosis" from the information provided to the USPO would impact its ability to enforce the Court's order setting conditions of release and adequately supervise Defendant.  In its memorandum, the USPO explained that:

> When the Court imposes the mental health condition, the defendant is referred to a mental health treatment provider and an assessment is completed to determine if treatment is needed.  Once the assessment is completed, the evaluation is made and includes the diagnosis and treatment recommendation.  The information in the evaluation is self-reported, and the treatment recommendation is based on this information.  Access to the evaluation allows the officer to review the information to ensure the treatment recommendation is based on accurate information regarding their current mental health and mental health history, thereby enforcing the Court's order that the defendant submit to a mental health evaluation.
>
> . . .
>
> The evaluation includes the defendant's diagnosis, treatment recommendation, and treatment plan.  This is valuable information for the officer so they can effectively supervise the defendant and assist with addressing the defendant's needs.  Knowing the defendant's diagnosis allows officers to identify signs of decompensation while interacting with the defendant in their residence and in the community.

(*Id*. at 35-36).  The USPO also cited to the unique challenges that may be faced in supervising a defendant with mental health disorders, including altering communication

- 4 -

strategies "that are firm yet non-confrontational" and requiring "more flexibility and patience on the part of the officer." (*Id*. at 35).

After considering the parties' positions, Judge Pedersen issued a Decision and Order directing the USPO to edit the release form to remove reference to "test results (e.g., psychological, psycho-physiological measurements, and vocational evaluations)" but otherwise leaving the form intact. *United States v. Eugene Jamar Thomas*, No. 6:21-mj-00564, Dkt. 7 (W.D.N.Y. Apr. 28, 2021). Judge Pedersen concluded that he was "not persuaded that [the test results] will provide information that goes to the statutory need to ascertain whether the condition set by the Court will 'reasonably assure the appearance of the person as required and the safety of any other person and the community. . . .' 18 U.S.C. § 3142(f)." *Id*. at 4. On the other hand, Judge Pedersen concluded that disclosure of Defendant's diagnosis and prognosis, defined as the "determination of a medical condition (such as a disease)" and the "process of forecasting the probable outcome of a present medical condition," respectively, was "prudent in this particular case, given [Defendant's] significant mental health history" and given his "concern for [Defendant's] mental health during pretrial supervision." *Id*. Among other concerns voiced by Judge Pedersen in his Decision and Order was "knowing whether [Defendant] poses or could pose a danger to Pretrial Services officers and others," and he concluded that allowing access to diagnosis and prognosis "could provide increased safety for [Pretrial Services'] officers and enable those officers to be aware of the possibility of any decompensation and signs thereof so that they can ensure [Defendant] reengages with mental health treatment to avoid becoming a danger." *Id*. at 5. Finally, with respect to potential release of the information for purposes

of preparing a presentence investigation report, Judge Pedersen concluded that Defendant could raise any objection in that regard to the sentencing court in the event it becomes necessary. *Id.*

Defendant appealed Judge Pedersen's decision (Dkt. 1; Dkt. 3), and the government filed papers in opposition and also cross-appealed the decision to the extent it struck the language regarding the disclosure of test results (Dkt. 4). Oral argument was held before the undersigned on May 14, 2021 (Dkt. 7), and in addition to the parties and representatives of the USPO, two mental health providers appeared who are the managing partners of one of the agencies that contracts with the USPO to provide mental health services. The Court reserved decision.

## II.  <u>LEGAL STANDARDS AND ANALYSIS</u>

### A.  <u>Standard of Review</u>

In reviewing a detention order of a magistrate judge, a district judge should not simply defer to the judgment of the magistrate judge, but rather must reach her own independent conclusions. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985). "When making its *de novo* review, the district court may rely on the record of the proceedings before the magistrate judge and may also accept additional evidence." *United States v. Marra*, 165 F. Supp. 2d 478, 481 (W.D.N.Y. 2001), *aff'd*, 21 F. App'x 66 (2d Cir. 2001). Although Judge Pedersen's decision is not a detention order, but rather an order setting conditions of release to which Defendant objects to the extent it requires him to sign a particular mental heath release, the Court concludes that nonetheless the *de novo* standard

of review applies.  *See United States v. Lee*, 972 F. Supp. 2d 403, 404 n.1 & 409 (E.D.N.Y. 2013) (reviewing *de novo* conditions of pretrial release).

      B.      The Bail Reform Act

The Bail Reform Act of 1984, 18 U.S.C. §§ 3141 *et seq.*, authorizes and sets forth the procedures for the release or detention of a person pending trial, sentence, and appeal. Pursuant to 18 U.S.C. § 3142(f)(2), a person charged with the crimes alleged against Defendant may only be detained pending trial if the government establishes that no set of conditions will protect against "a serious risk that such person will flee" or "a serious risk that such person will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror."  The government makes no claim that this standard is satisfied in this case.

Pursuant to 18 U.S.C. § 3142(c), if it is determined that release on personal recognizance or unsecured appearance bond will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community, a person may be released subject to set conditions concerning not committing further crimes and providing a DNA sample, and "subject to the least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community," which may include (among others) the condition that the person "undergo available medical, psychological, or psychiatric treatment, including treatment for drug or alcohol dependency, and remain in a specific institution if required for that purpose. . . ." 18 U.S.C. § 3142(c)(1)(B)(x).  The statute also provides a catchall provision allowing for

- 7 -

imposition of "any other condition that is reasonably necessary to assure the appearance of the person as required and to assure the safety of any other person and the community." *Id.* § 3142(c)(1)(B)(xiv).

The statutory factors that a court must consider in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, are as follows:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves . . . a controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

C.    <u>Analysis</u>

While the parties submit competing arguments concerning the rights to privacy and constitutional protections, the crux of the dispute before the Court is actually quite narrow—whether release of test results, diagnosis, and prognosis is necessary for the USPO to ensure Defendant's compliance with the pretrial release conditions, including that he complete a mental health evaluation and/or treatment as approved by USPO.  Defendant

has no objection to the release of mental health information necessary to permit a supervising probation officer to confirm that he is compliant with his pretrial release conditions. (Dkt. 3 at 7). However, Defendant contends that release of the test results, diagnosis, and prognosis is too broad and does not serve the purpose of ensuring his compliance, particularly in view of his right to privacy with respect to that information. (*Id*. at 7-8).

Like Judge Pedersen, this Court disagrees with Defendant concerning the release of information regarding his diagnosis and prognosis. Restricting the USPO's access to this information unnecessarily places blinders on Defendant's supervising officer and would undermine the USPO's ability to effectively supervise Defendant. The government has sufficiently established that this information is critical to the USPO's ability to effectively supervise Defendant, and concrete examples were provided by the USPO at the oral argument before the undersigned as to how disclosure of this information not only aids in the supervision of Defendant, but can actually protect an individual being supervised. Also at the oral argument Casey Switzer of RKS Mental Health Counseling explained how such information assists the USPO in performing its role to be aware of an individual's symptoms, whether the symptoms are increasing or decreasing, and various coping mechanisms that are prescribed by the counselor so that the USPO can assist the mental health provider in implementing the treatment plan. As confirmed at oral argument, the USPO is not seeking progress notes related to any mental health therapy, nor is it seeking to get into the nitty gritty details of Defendant's counseling sessions. Rather, it wants to know the mental health provider's assessment as to Defendant's diagnosis and symptoms,

the plan for addressing those issues, and the prognosis. The Court agrees with the government that without this information, USPO's ability to supervise Defendant—who has a significant mental health history, the details of which are largely unknown—would be seriously undermined and could present unacceptable risks to the safety of the USPO officers as well as Defendant. The Court reaches this conclusion based, in part, on the past lengthy commitment of Defendant in a mental hospital, the murkiness related to the details of his mental health history, his alleged interactions with the IRS officer as detailed in the government's papers and his subsequent communications thereafter, and the prior finding that Defendant was not competent to stand trial and presented a danger to himself or others.

The Court recognizes that Defendant contends he is entitled to keep this information private, but the reality is that once an individual has been charged with a crime, certain rights must give way to reasonable restrictions in order to protect the safety of others and the community, prevent any risk of flight, and ensure compliance with pretrial release conditions. Just by way of example, notwithstanding an individual's Second Amendment rights, 18 U.S.C. § 3142(c)(1)(B) expressly provides that a pretrial release condition may require an individual to "refrain from possessing a firearm, destructive device, or other dangerous weapon." As the Supreme Court has explained, even the weightiest rights of an individual charged with a crime "may, in circumstances where the government's interest is sufficiently weighty, be subordinated to the greater needs of society." *United States v. Salerno*, 481 U.S. 739, 750-51 (1987).

Defendant relies on the *Lee* case, where the court concluded that the government had not persuaded it that disclosure of "what transpires in [the defendant's] treatment and

- 10 -

evaluation sessions is necessary to assure the safety of the community." 972 F. Supp. 2d at 408 (noting that "[w]hen pushed to explain the reason for this condition of release, the government repeatedly stated that this is a 'standard' condition"). However, in *Lee*, unlike in this case, there was no evidence that the defendant had any history of mental health issues, and pretrial services was seeking access to the specific details of "what transpire[d] in [the defendant's] treatment and evaluation sessions." *Id.* Further, it appears that the unreported decisions from magistrate judges in this District that Defendant cites (*see* Dkt. 3 at 9-10) involved similar situations—that is, defendants with no history of mental health issues and the condition being imposed as a matter of routine for the type of case at issue.

The Court similarly agrees with Judge Pedersen that the government has not established the necessity for the broad disclosure of test results. At oral argument, the USPO distributed a sample test, and the Court agrees with Defendant that authorizing disclosure of this intimate raw data to the USPO is not necessary to ensure compliance with the pretrial release conditions. Indeed, despite the Court's questioning, neither the USPO nor the government appeared able to articulate a basis for the wholesale disclosure of test results to the USPO, and the Court agrees with Judge Pedersen that that language should be stricken from the release. *See* 18 U.S.C. § 3142(c)(1)(B) (the Court must impose the "least restrictive" combination of conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community").

To be clear, this does not mean that the USPO is not entitled to at least portions of any written evaluation completed with respect to Defendant. It does not appear that this issue was expressly addressed by Judge Pedersen, and it is difficult for this Court in a

vacuum to articulate what portion of any written evaluation should be disclosed to the USPO.  Certainly, based on the above discussion, the diagnoses, prognosis, and treatment plan should be disclosed, but it may well be that other aspects of the evaluation should be disclosed to ensure compliance with Defendant's pretrial release conditions.  Since it is not even clear here that the provider with whom Defendant has scheduled an appointment will prepare a written evaluation, the Court hesitates to opine further on other aspects of the evaluation that the USPO should receive.  Particularly since it does not appear that the issue was specifically addressed by Judge Pedersen, the Court concludes that the more prudent course is for that issue to be revisited with Judge Pedersen, if necessary.  The release language, which is the issue currently before the Court, does not expressly reference disclosure of an evaluation, and instead the reference to evaluation is part of Condition M.  Thus, there must be some mechanism by which the USPO can confirm that the evaluation is actually performed.   And as Ms. Switzer opined at the oral argument before the undersigned, the evaluation is a critical first step, and informs the diagnosis, the assessment, the treatment plan and recommendation, and prognosis.  Particularly given that input, the Court does not believe that any qualified mental health provider could provide effective treatment without conducting an evaluation.  For these reasons, the Court is not persuaded by Defendant's argument that he is skipping the evaluation and going straight into therapy or counseling—the evaluation is a condition of release and must be performed.[2]  The extent of the evaluation's disclosure to the USPO can only be adequately

---

[2]     Defendant's counsel argued at oral argument that since the condition is phrased as evaluation "and/or" treatment, Defendant was not required to complete an evaluation.  The

addressed once more particulars about the evaluation, including whether it is in writing, are known.

Finally, with respect to the language of the release indicating that the information obtained "may" be made available for purposes of a presentence report, the Court again agrees with Judge Pedersen that it is premature to litigate this issue. Pursuant to 18 U.S.C. § 3153(c)(2)(C), information obtained in the course of performing pretrial services functions is deemed confidential, except access is allowed for probation officers for the purpose of compiling presentence reports. The release language is simply confirming this point. This does not mean that Defendant cannot object to the inclusion of information gleaned from his mental health providers in any presentence report, and that issue is best left to be resolved by a sentencing court if and when it becomes necessary. As the government aptly articulated at oral argument, the proverbial bell is unrung in this courthouse all the time, and judges are perfectly capable of limiting their consideration of matters for sentencing to only those facts and information that ultimately are included in the final presentence investigation report, after the resolution of any objections.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, the Court denies Defendant's appeal (Dkt. 1; Dkt. 3) and the government's cross-appeal (Dkt. 4) of the Decision and Order of Magistrate Judge

---

Court does not believe this is a fair reading of the condition. Rather, as mentioned above, an evaluation is a critical first step to the determination of whether treatment is needed. The use of "and/or" suggests that in some cases, if not many, the evaluation may be the only part of the condition that is performed, if the evaluation results in the recommendation of no treatment.

Pedersen with respect to the release that Defendant must sign in order to effectuate Condition M of his pretrial release conditions.

       SO ORDERED.

                                     ELIZABETH A. WOLFORD
                                     United States District Judge

Dated: May 19, 2021
       Rochester, New York